J.VC

(ATTACHMENTS)

J.UC

UNITED STATES OF AMERICA, Plaintiff - Appellee v. CLAIBORNE LEMAR MAUPIN, Defendant - Appellant
UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
2019 U.S. App. LEXIS 27180
No. 19-6817
September 9, 2019, Filed

**Editorial Information: Prior History**

{2019 U.S. App. LEXIS 1}(3:04-cr-00047-NKM-18).Underlined United States v. Maupin, 2019 U.S. Dist. LEXIS 133943 (W.D. Va., June 3, 2019)

**Counsel**            For United States of America, Plaintiff - Appellee: Jennifer R. Bockhorst, Assistant U. S. Attorney, Office of The United States Attorney, Abingdon, VA.
                For Claiborne Lemar Maupin, Defendant - Appellant: Lisa M. Lorish, Office of The Federal Public Defender, Charlottesville, VA; Juval Orisha Scott, Federal Public Defender, Office of The Federal Public Defender, Western District of Virginia, Roanoke, VA.

**Judges:** Judge Wilkinson with the concurrence of Judge King and Judge Harris.

### Opinion

### ORDER

Upon consideration of the government's unopposed motion to remand, the court grants the motion, vacates the district court's order, and remands this case to the district court to consider whether to reduce appellant's sentence under the First Step Act in the exercise of its discretion. The clerk is directed to attach a copy of the motion to remand to this order and transmit a copy of both to the district court.

Entered at the direction of Judge Wilkinson with the concurrence of Judge King and Judge Harris.

### UNITED STATES' MOTION TO REMAND

The United States of America, by counsel, hereby moves the Court, pursuant to Federal and Local Rule of Appellate Procedure 27, to vacate the order of the district{2019 U.S. App. LEXIS 2} court and remand to that court to determine whether to reduce Maupin's sentence in the exercise of its discretion.

### Factual Background

### A. Maupin's Conviction

Claiborne Lemar Maupin pled guilty on April 10, 2006, to Count Three of the Superseding Indictment, participating in a Racketeering Influenced Corrupt Organization (RICO), in violation of 18 U.S.C. §§ 1962(d) and 1963. JA at 68. The charge alleged a RICO conspiracy whose purposes included attempted murder, kidnapping, robbery, and trafficking in cocaine base, heroin, phencyclidine (PCP), and marijuana. JA at 37. The "pattern of racketeering activity" alleged in Count Three "consist[ed] of

CIRHOT                                1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Attachment#1

[among other things] multiple acts involving offenses dealing with the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in controlled substances, indictable as in violation of [18 U.S.C. §§ 841 and 846]." JA at 51.

Maupin's role, as alleged, was to obtain and supply narcotics to other members of the organization to sell at the street level and to serve as an "enforcer" for the organization. JA at 45-46. In the "Notice of Special Findings," Count Three incorporated by reference the first four paragraphs of Count One of the Superseding Indictment, which charged Maupin and others{2019 U.S. App. LEXIS 3} with conspiracy to distribute and possess with intent to distribute 50 grams of cocaine base, 5 kilograms of cocaine hydrochloride, and detectable amounts of heroin, PCP, and marijuana. JA at 19-22, 52. Count One carried a maximum penalty of life imprisonment pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(A), based upon the amounts of cocaine base and cocaine hydrochloride alleged.

Maupin pled guilty pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). JA at 68. As part of the agreement, the United States agreed to dismiss Count One, and the parties agreed the Court should impose a sentence of twenty years. JA at 69.

The maximum penalty for RICO conspiracy is determined by the maximum penalty for the racketeering activity. 18 U.S.C. § 1963(a).1 Where the racketeering activity carries a maximum of life imprisonment, the RICO maximum penalty is also life. 18 U.S.C. § 1963(a). Otherwise, the RICO maximum penalty is 20 years. *Id.*

The plea agreement and the Presentence Report in this case stated the maximum penalty for Maupin's RICO offense was life{2019 U.S. App. LEXIS 4} imprisonment and a fine of $250,000. JA at 68. The quantity of cocaine base and the quantity of cocaine hydrochloride involved in Maupin's offense each would have triggered the maximum penalty of life imprisonment under 18 U.S.C. § 841(b)(1)(A). However, the plea agreement does not contain any stipulations with regards to the Special Findings. It does not specify to which drugs or to what quantity of drugs Maupin pled-whether it was to 50 grams of cocaine base or 5 kilograms of cocaine hydrochloride, or both. JA at 68-73.

In the Presentence Report, adopted by the sentencing court without change, the only drug for which Maupin was held accountable was cocaine base, suggesting the basis for the plea was Maupin's involvement with cocaine base only. JA at 110. Whereas some defendants stipulated to quantities of cocaine hydrochloride as well as cocaine base, and others stipulated to only marijuana quantities, there is nothing in the factual recitation or the drug weight findings in the Presentence Report that establishes Maupin's involvement with a drug other than cocaine base. JA at 104-110. Maupin was found accountable for more than 1.5 kilograms of cocaine base. JA at 110. He was determined to have a total offense level of 38 and a criminal history category VI, yielding{2019 U.S. App. LEXIS 5} a guideline range of 360 months to life. JA at 118.

Maupin was sentenced on June 29, 2006, in accordance with the plea agreement, to 240 months' imprisonment. JA at 76.

On October 3, 2018, the district court granted Maupin's motion to reduce his sentence under Amendment 782 and *Hughes v. United States*, 138 S. Ct. 1765, 201 L. Ed. 2d 72 (2018), and reduced his sentence to 210 months, the bottom of the current guideline range for an offense involving 1.5 kilograms of cocaine base.

### B. The First Step Act

The First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, was enacted December 21, 2018. Section 404 of the Act permits the sentencing court, upon motion of the defendant or the government, or upon its own motion, to impose a reduced sentence on certain

CIRHOT                                           2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"covered offense[s]" in accordance with the Fair Sentencing Act of 2010, if no such reduction was previously granted. It reads:

SEC. 404. Application of Fair Sentencing Act.

(a) Definition of covered offense.-In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.-A court that imposed a sentence for a covered offense may, on motion of the defendant,{2019 U.S. App. LEXIS 6} the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.-No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.First Step Act § 404, 132 Stat. 5222.

As is relevant here, Section 2 of the Fair Sentencing Act of 2010 effectively reduced the penalties for offenses involving cocaine base by increasing the threshold cocaine base quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1). Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010) ("Fair Sentencing Act"). After the statute's enactment, a violation of 21 U.S.C. § 841(a)(1) must involve at least 280 grams of cocaine base, rather than 50 grams, to trigger the 10 to life{2019 U.S. App. LEXIS 7} penalty range of 21 U.S.C. § 841(b)(1)(A), and 28 grams of cocaine base, rather than 5 grams, to trigger the 5 to 40 year penalty range of 21 U.S.C. § 841(b)(1)(B). Section 3 of the Fair Sentence Act of 2010 modified 21 U.S.C. § 844(a) by eliminating the mandatory minimum sentence for simple possession.

## C. First Step Act Proceedings

On February 21, 2019, Maupin filed a motion to reduce his sentence under Section 404(b) of the First Step Act. JA at 81. He reasoned his RICO conviction is a "covered offense" because the maximum penalty was determined by the racketeering activity, which he defined as a drug conspiracy involving more than 50 grams of cocaine base. JA at 83. Because the Fair Sentencing Act reduced the maximum penalty for the racketeering activity to 40 years, he reasoned, he was entitled to a discretionary sentence reduction under the First Step Act. *Id.* He requested a reduction to a sentence of 139 months, a 33% reduction from the bottom of the applicable guideline range and significantly less than the 168 months he had served as of February 3, 2019. JA at 81-82.

The United States filed a Motion to Dismiss on March 12, 2019, arguing that RICO was not a "covered offense" under the First Step Act, because neither Section 2 nor 3 of the Fair Sentencing Act amended the penalties for RICO. JA at 88.

On June 3, 2019, the district court{2019 U.S. App. LEXIS 8} denied Maupin's motion, agreeing with the United States that the RICO violation is not a "covered offense":

[F]or an offense to be a "covered offense" its statutory penalties must have been "modified by section 2 or 3 of the Fair Sentencing Act" . . . The statutory penalties associated with RICO

CIRHOT                                              3

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

simply do not fit that description. *See* 18 U.S.C. § 1963(a) (effective December 1, 2009). Furthermore, it is clear that "Congress intended that a RICO violation be a discrete offense" separate and apart from any predicate offenses, and this Court will treat it accordingly. *United States v. Crosby*, 20 F.3d 480, 484, 305 U.S. App. D.C. 290 (D.C. Cir. 1994) (collecting cases holding the same, including *United States v. Arnoldt*, 947 F.2d 1120, 1125-27 (4th Cir. 1991)).JA at 95. In a footnote, the district court further held that a RICO conspiracy conviction is different from a Section 846 conspiracy. *Id.* at n.1. Section 846 states that a defendant guilty of attempt or conspiracy of a drug offense "shall be subject to the same penalties as prescribed for that offense," and "[t]his creates a clear relationship between section 846 and 21 U.S.C. § 841(b)(1), a relationship that does not exist between 18 U.S.C. § 1963 and 21 U.S.C. § 841(b)(1)." *Id.*

Maupin filed a timely notice of appeal. JA at 97.

## Argument

Although the government argued in the district court that Maupin's RICO offense does not qualify as a "covered offense" under Section 404 of the First Step Act, the United States now agrees{2019 U.S. App. LEXIS 9} with Maupin that it does. The United States therefore agrees that the Court should remand this case to the district court to allow that court to consider whether to reduce Maupin's sentence in the exercise of its discretion.

The key question in determining whether a defendant is eligible under Section 404 of the First Step Act is whether the "statutory penalties" for a defendant's "violation of a Federal criminal statute" were modified by Section 2 or 3 of the Fair Sentencing Act. Thus, the court must consider whether the statutory penalties associated with the defendant's violation of a federal criminal statute would have been different had Sections 2 and 3 of the Fair Sentencing Act been in effect. A defendant therefore may be eligible even if he was convicted under a statute other than those directly amended by Sections 2 and 3 of the Fair Sentencing Act. For example, a defendant may be eligible if he was convicted of a cocaine-base offense under 21 U.S.C. § 846 (attempt and conspiracy), so long as the quantity of cocaine base involved in the offense would no longer support the same statutory penalty range.2

The same is true of a defendant convicted under RICO, provided that the defendant's statutory maximum was increased to life as a result{2019 U.S. App. LEXIS 10} of a racketeering activity involving cocaine base that would no longer carry a maximum penalty of life imprisonment. Just as the statutory penalties associated with a violation of Section 846 were "modified by" the Fair Sentencing Act, so too were the statutory penalties associated with certain violations of RICO.

Here, the statutory-maximum penalty for Maupin's RICO offense was set by reference to Maupin's cocaine-base-trafficking racketeering activity. That racketeering activity involved more than 1.5 kilograms of cocaine base-a quantity that would support the same maximum penalty of life imprisonment under Section 841(b)(1)(A) both before and after enactment of the Fair Sentencing Act. Ordinarily, the United States would argue that Maupin is ineligible for a discretionary sentence reduction for that reason. However, the United States did not preserve this alternate argument for finding Maupin ineligible. Accordingly, the only determination remaining for the district court is whether, in its discretion, to reduce Maupin's sentence, which is already within the guideline range currently applicable to his offense.

## Position of Counsel

Counsel for Maupin has been contacted and has indicated he has no objection to a remand.{2019 U.S. App. LEXIS 11}

CIRHOT                                                   4

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## Conclusion

For the foregoing reasons, the United States moves for this Court to vacate the district court's opinion and remand for the district court to consider whether to reduce Maupin's sentence in the exercise of its discretion.

Respectfully submitted,

THOMAS T. CULLEN

United States Attorney

/s/ Jennifer R. Bockhorst

Jennifer Bockhorst

Assistant United States Attorney

Tennessee Bar No. 021395

U.S. Attorney's Office

180 West Main Street, Suite B19

Abingdon, Virginia 24210

276-628-4161

276-628-7399 (fax)

USAVAW.ECFAbingdon@usdoj.gov

## Footnotes

1

18 U.S.C. § 1963(a) reads, in relevant part:

Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both . . . .

2

This interpretation of Section 404 comports with Congress's use of the broad phrase "a Federal criminal statute." Congress easily could have limited the reach of Section 404 to the five statutory provisions directly amended by Sections 2 and 3 of the Fair Sentencing Act, but it did not.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

BREAKING NEWS: UNITED STATES SUPREME COURT DECIDES DAVIS VS UNITED STATES

All, the Supreme Court has announced their decision in Davis. This is an important decision that deals with 18 U.S.C. 924(c). Since Johnson, many have argued that the similarly worded residual clause of 924(c)(3)(B) is equally unconstitutional. Following Johnson, the Court held that the nearly identical statute, 18 U.S.C. 16(b) is void for vagueness. Now, after a long wait, the Supreme Court has finally decided once and for all that the residual clause of 18 U.S.C. 924(c)(3)(B) is unconstitutionally vague and cannot stand.

UNITED STATES v. DAVIS ET AL.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 18 431.

Argued April 17, 2019 Decided June 24, 2019

Respondents Maurice Davis and Andre Glover were charged with multiple counts of Hobbs Act robbery and one count of conspiracy to commit Hobbs Act robbery. They were also charged under 18 U. S. C. 924(c), which authorizes heightened criminal penalties for using, carrying, or possessing a firearm in connection with any federal "crime of violence or drug trafficking crime." 924(c)(1)(A). "Crime of violence" is defined in two subparts: the elements clause, 924(c)(3)(A), and the residual clause, 924(c)(3)(B). The residual clause in turn defines a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Ibid. A jury convicted the men on most of the underlying charges and on two separate 924(c) charges for brandishing a firearm in connection with their crimes. The Fifth Circuit initially rejected their argument that 924(c)'s residual clause is unconstitutionally vague, but on remand in light of Sessions v. Dimaya, 584 U. S. ___, the court reversed course and held 924(c)(3)(B) unconstitutional. It then held that Mr. Davis's and Mr. Glover's convictions on the 924(c) count charging robbery as the predicate crime of violence could be sustained under the elements clause, but that the other count which charged conspiracy as a predicate crime of violence could not be upheld because it depended on the residual clause.

Held: Section 924(c)(3)(B) is unconstitutionally vague. Pp. 4 25.

(a) In our constitutional order, a vague law is no law at all. The vagueness doctrine rests on the twin constitutional pillars of due process and separation of powers. This Court has recently applied the doctrine in two cases involving statutes that bear more than a passing resemblance to 924(c)(3)(B)'s residual clause Johnson v. United States, 576 U. S. ___, which addressed the residual clause of the Armed Career Criminal Act (ACCA), and Sessions v. Dimaya, which addressed the residual clause of 18 U. S. C. 16. The residual clause in each case required judges to use a "categorical approach" to determine whether an offense qualified as a violent felony or crime of violence. Judges had to disregard how the defendant actually committed the offense and instead imagine the degree of risk that would attend the idealized " 'ordinary case' " of the offense. Johnson, 576 U. S., at ___. The Court held in each case that the imposition of criminal punishments cannot be made to depend on a judge's estimation of

the degree of risk posed by a crime's imagined "ordinary case." The government and lower courts have long understood 924(c)(3)(B) to require the same categorical approach. Now, the government asks this Court to abandon the traditional categorical approach and hold that the statute commands a case-specific approach that would look at the defendant's actual conduct in the predicate crime. The government's case-specific approach would avoid the vagueness problems that doomed the statutes in Johnson and Dimaya and would not yield to the same practical and Sixth Amendment complications that a case-specific approach under the ACCA and 16 would, but this approach finds no support in 924(c)'s text, context, and history. Pp. 4 9.

(b) This Court has already read the nearly identical language of 16(b) to mandate a categorical approach. See Leocal v. Ashcroft, 543 U. S. 1, 7. And what is true of 16(b) seems at least as true of 924(c)(3)(B). The government claims that the singular term "offense" carries the "generic" meaning in connection with the elements clause but a "specific act" meaning in connection with the residual clause, but nothing in 924(c)(3)(B) rebuts the presumption that the single term "offense" bears a consistent meaning. This reading is reinforced by the language of the residual clause itself, which speaks of an offense that, "by its nature," involves a certain type of risk. Pp. 9 12.

(c) The categorical reading is also reinforced by 924(c)(3)(B)'s role in the broader context of the federal criminal code. Dozens of federal statutes use the phrase "crime of violence" to refer to presently charged conduct. Some cross-reference 924(c)(3)'s definition, while others are governed by the virtually identical definition in 16. The choice appears completely random. To hold that 16(b) requires the categorical approach while 924(c)(3)(B) requires the case-specific approach would make a hash of the federal criminal code. Pp. 12 13.

ATTACHMENT #2

(d) Section 924(e)(3)(B)'s history provides further evidence that it calls for the same categorical approach command as 16 (b). When Congress enacted the definition of "crime of violence" in 16 in 1984, it also employed the term in numerous places in the Act, including 924(c). The two statutes, thus, were originally designed to be read together. And when Congress added a definition of "crime of violence" to 924(c) in 1986, it copied the definition from 16 without making any material changes to the language of the residual clause, which would have been a bizarre way of suggesting that the two clauses should bear drastically different meanings. Moreover, 924(c) originally prohibited the use of a firearm in connection with any federal felony, before Congress narrowed 924(c) in 1984 by limiting its predicate offenses to "crimes of violence." The case-specific reading would go a long way toward nullifying that limitation and restoring the statute's original breadth. Pp. 14 17.

(e) Relying on the canon of constitutional avoidance, the government insists that if the case-specific approach does not represent the best reading of the statute, it is nevertheless the Court's duty to adopt any "fairly possible" reading to save the statute from being unconstitutional. But it is doubtful the canon could play a proper role in this case even if the government's reading were "possible." This Court has sometimes adopted the narrower construction of a criminal statute to avoid having to hold it unconstitutional if it were construed more broadly, but it has not invoked the canon to expand the reach of a criminal statute in order to save it. To do so would risk offending the very same due process and separation of powers principles on which the vagueness doctrine itself rests and would sit uneasily with the rule of lenity's teaching that ambiguities about a criminal statute's breadth should be resolved in the defendant's favor.

Pp. 17 19. 903 F. 3d 483, affirmed in part, vacated in part, and remanded.

GORSUCH, J., delivered the opinion of the Court, in which GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. KAVANAUGH, J., filed a dissenting opinion, in which THOMAS and ALITO, JJ., joined, and in which ROBERTS, C. J., joined as to all but Part II C.

ATTACHMENT #2(b)

J·V·C

UNITED STATES OF AMERICA, Appellee, v. FRANCISCO GONZALEZ, Defendant-Appellant.
UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT.
680 Fed. Appx. 46; 2017 U.S. App. LEXIS 3235
No. 15-3097-cr
February 23, 2017, Decided

Notice:

PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING
THE CITATION TO UNPUBLISHED OPINIONS.

Editorial Information: Prior History

{2017 U.S. APP. LEXIS 1}Appeal from a final order of the United States District Court for the Western
District of New York (Charles J. Siragusa, Judge).

Counsel

FOR APPELLANT: Francisco Gonzalez, Pro se, Lewisburg,
Pennsylvania.

FOR APPELLEE: Monica J. Richards, Assistant United States
Attorney, for James P. Kennedy, Jr., Acting United States Attorney for the Western District
of New York, Buffalo, New York.

Judges: PRESENT: REENA RAGGI, RAYMOND J. LOHIER, JR. CHRISTOPHER F. DRONEY, Circuit
Judges.

Opinion

{680 Fed. Appx. 47} SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the
final order entered on September 14, 2015, is VACATED, and the case is REMANDED for further
proceedings.

Defendant Francisco Gonzalez is presently serving a 101-month prison sentence imposed after he
pleaded guilty to cocaine and firearms crimes pursuant to Fed. R. Crim. P. 11(c)(1)(C). See 21
U.S.C. § 841(a)(1); 18 U.S.C. § 922(g)(1). He here {680 Fed. Appx. 48} appeals, pro se, from the
denial of a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. Amendment 782 on
the ground that he was ineligible. We review de novo a defendant's ineligibility for a § 3582(c)(2)
sentence reduction. See United States v. Leonard, 844 F.3d 102, 106-07 (2d Cir. 2016). In so doing,
we assume the parties' familiarity with the facts and record of prior proceedings, which we reference
only as necessary to explain our decision to vacate{2017 U.S. App. LEXIS 2} and remand.

A convicted defendant is eligible for a sentence reduction if (1) he "has been sentenced to a term of
imprisonment based on a sentencing range that has subsequently been lowered," and (2) "such a
reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18
U.S.C. § 3582(c)(2). The pertinent policy statement conditions reduction eligibility on "the guideline
range applicable to that defendant ha[ving] subsequently been lowered as a result of an amendment
to the Guidelines Manual listed in subsection (d)." U.S.S.G. § 1B1.10(a)(1). Thus, to be eligible for a

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use
of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master
Agreement.

Attachment #3

sentence reduction, "(1) the original sentence must have been 'based on' the Sentencing Guidelines, and (2) the amendment must have lowered the Guidelines range 'applicable to' the defendant at the time of the original sentencing." *United States v. Leonard*, 844 F.3d at 107.

1. "Based On"

Although Gonzalez was sentenced above the 78-to-97-month Guidelines range calculated by the district court (and the 63-to-78-month range referenced in his 11(c)(1)(C) agreement), we conclude for the reasons stated in *United States v. Leonard*, 844 F.3d at 107-12, that his 101-month sentence was "based on" the Guidelines as that requirement was construed by justices in the majority in *Freeman v. United States*, 564 U.S. 522, 131 S. Ct. 2685, 180 L. Ed. 2d 519 (2011).

The *Freeman* plurality held that, where a district court accepts an{2017 U.S. App. LEXIS 3} 11(c)(1)(C) agreement, "§ 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to . . . approve the agreement." *Freeman v. United States*, 564 U.S. at 530. "[I]f the judge uses the [calculated] sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense a basis for the sentence." *Id.* at 529.

Here, the district court independently calculated Gonzalez's applicable Guidelines range before agreeing to the parties' stipulated sentence of 101 months, explaining that such an upward departure was "reasonable and understandable" to reflect criminal "conduct for which [Gonzalez was] not going to be prosecuted." App'x Sched. D. at 11; *see United States v. Leonard*, 844 F.3d at 109-10 (stating that *Freeman* plurality "appear[ed] to recognize the possibility that a sentence can be 'based on' the Guidelines even if departing or varying from the applicable Guidelines range"). In sum, it was only after explicitly considering the applicable Guidelines range in conjunction with the 18 U.S.C. § 3553(a) factors that the district court imposed the agreed-upon 11(c)(1)(C) sentence. On this record, we conclude that, under the *Freeman*{2017 U.S. App. LEXIS 4} plurality's rationale for decision, Gonzalez's sentence was "based on" the Guidelines. *See Freeman v. United States*, 564 U.S. at 534 (stating that "judge's decision to accept the [11(c)(1)(C)] plea and impose the recommended sentence is likely to be based on the Guidelines").

{680 Fed. Appx. 49} The district court's statement that the difference between its own Guidelines calculation and that in the plea agreement was "not going to make any difference whatsoever" warrants no different conclusion. App'x Sched. D. at 10. This statement can be read simply as an observation that "based on" its Guidelines calculation, it deemed the agreed-upon sentence an appropriate departure in light of other § 3553(a) factors.

The *Freeman* concurrence identifies the parties' 11(c)(1)(C) agreement, rather than the district court's Guidelines calculation, as critical to the "based on" analysis. *See Freeman v. United States*, 564 U.S. at 539 (Sotomayor, J., concurring in the judgment) (stating that defendant is eligible for relief where plea agreement "make[s] clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty"). The concurrence stated that its reasoning was not limited to sentences within a specified Guidelines range, but also applied to departures that{2017 U.S. App. LEXIS 5} were determined by reference to the Guidelines. *See id.* at 543 n.9; *United States v. Leonard*, 844 F.3d at 110. In Gonzalez's plea agreement, the parties detailed a Guidelines calculation for both counts of the information before agreeing that "an upward departure and non-Guidelines sentence [of 101 months' imprisonment] pursuant to Guidelines § 5K2.21 (dismissed and uncharged conduct) is appropriate." App'x Sched. C. at 9. This language makes clear that the basis for the agreed-upon sentence was the identified Guidelines range, with an upward departure specifically authorized by the Guidelines.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In urging otherwise, the government suggests that the stipulated above-Guidelines sentence is based at least in part on its agreement not to file a prior-felony information pursuant to 21 U.S.C. § 851. While the agreement represents that no such information will be filed, it makes no mention of that forbearance as a sentencing factor. Only U.S.S.G. § 5K2.21 is cited to support the departure. We do not understand the *Freeman* concurrence to support looking beyond this ground. *See Freeman v. United States*, 564 U.S. at 538 (Sotomayor, J., concurring in the judgment) (rejecting idea that "§ 3582(c)(2) calls upon district courts to engage in a free-ranging search through the parties' negotiating history"). The government's separate contention that the agreed-upon sentence represented {2017 U.S. App. LEXIS 6} a reduction from potential mandatory minimums fails for the same reason.

Accordingly, we conclude that Gonzalez's sentence was "based on" a Guidelines sentencing range as that requirement has been construed in the *Freeman* plurality and concurring opinions.

## 2. "Applicable To"

Where a defendant pleads guilty pursuant to an 11(c)(1)(C) agreement, his applicable Guidelines range for purposes of determining § 3582(c)(2) eligibility is "that determined by the court as set forth in the Guidelines, without regard to the parties' agreement to a different calculation, and before the exercise of any departure or variance discretion." *United States v. Leonard*, 844 F.3d at 113. The district court here determined that Gonzalez's applicable Guidelines range was 78 to 97 months' imprisonment. Amendment 782 lowered that range to 63 to 78 months. *See* U.S.S.G., Supp. to App. C., Amend. 782 (Nov. 2014).

Because Gonzalez was sentenced to a term of imprisonment based on a subsequently lowered sentencing range and because the subsequent amendment lowered his applicable Guidelines range, he is eligible for a sentence reduction under {680 Fed. Appx. 50} § 3582(c)(2). We are, therefore, obliged to vacate the challenged order of denial and to remand the case. In doing so, however, we note that even {2017 U.S. App. LEXIS 7} if a defendant is eligible for a sentence reduction, it remains within the discretion of the district court to determine whether such a reduction is warranted under the circumstances of the case. *See Dillon v. United States*, 560 U.S. 817, 826-27, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010). We take no position as to whether such a reduction is warranted in this particular case, or, if warranted, the appropriate extent of a reduction. *See id.; United States v. Borden*, 564 F.3d 100, 104 (2d Cir. 2009).

## 3. Conclusion

We have considered the parties' remaining arguments and conclude that they are without merit. Accordingly, the order of the district court is VACATED, and the case is REMANDED for further proceedings.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

```
ALFG9              *      INMATE EDUCATION DATA        *    03-13-2020
PAGE 001 OF 001 *              TRANSCRIPT             *    13:32:37

REGISTER NO: 48909-069    NAME..: VAZQUEZ-CARRASQUILLO   FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: ALF-ALLENWOOD LOW FCI

--------------------------- EDUCATION INFORMATION ---------------------------
FACL ASSIGNMENT DESCRIPTION                     START DATE/TIME STOP DATE/TIME
ALF  ESL NEED   ESL NEED-SHOULD BE/IS ENROLLED 04-18-2017 0815 CURRENT
ALF  GED HAS    COMPLETED GED OR HS DIPLOMA     04-18-2017 0815 CURRENT

--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL   DESCRIPTION                   START DATE  STOP DATE EVNT AC LV HRS
ALF        ENGLISH CLASS 0930AM-11AM     07-31-2019  CURRENT
ALF        ARTICULAR & MUSCLE SYSTEMS    02-11-2020  02-25-2020  P  C  P   20
ALF        THE SKELETAL SYSTEM           01-07-2020  01-21-2020  P  C  P   20
ALF        TISSUES & INTEGUMENTARY SYSTEM 12-03-2019 12-17-2019  P  C  P   20
ALF        CELL STRUCTURE METAB & REPRO  11-05-2019  11-19-2019  P  C  P   20
ALF        HUMAN BODY & CHEMISTRY OF LIFE 10-08-2019 10-22-2019  P  C  P   20
ALF        STRESS MGT & LIFE FIT & WELL  09-10-2019  09-24-2019  P  C  P   20
ALF        PREV STI & ADDICTIVE BEHAVIOR 08-06-2019  08-20-2019  P  C  P   20
ALF        ENGLISH CLASS 0730-0930       07-10-2018  07-31-2019  C  W  I    0
ALF        BODY SHRED WELLNESS CLASS     08-13-2018  10-10-2018  P  C  P    2
ALF        JUMP ROPE                     08-14-2018  10-04-2018  P  C  P    2
ALF        BEGINNERS SPINNING            06-25-2018  08-15-2018  P  C  P    4
ALF        EXERCISE PHYSIOLOGY (REC)     05-23-2018  05-23-2018  P  C  P    1
ALM        ESL 12:30 - 2:30 VENTURINI    10-14-2017  02-20-2018  P  W  I  240
ALM        1:30 - 3:30 VENTURINI'S CLASS 05-09-2017  10-14-2017  C  W  I    0

--------------------------- HIGH TEST SCORES ---------------------------
TEST     SUBTEST      SCORE    TEST DATE    TEST FACL  FORM   STATE
CASAS    LIST CERT    210.0    07-24-2019.  ALF        83L
         LIST LEV A   201.0    07-09-2019   ALF        82L
         LIST LEV B   212.0    12-12-2017   ALM        33
         LIST PLACE   206.0    06-14-2017   ALM        2
         READ CERT    221.0    11-08-2019   ALF        524
         READ LEV B   205.0    07-09-2018   ALF        83R
         READ PLACE   209.0    07-09-2018   ALF        2

G0000      TRANSACTION SUCCESSFULLY COMPLETED
```